# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BRANDON HERRMANN,<br><br>Defendant. | Case No. CR15-2053<br><br>ORDER FOR PRETRIAL DETENTION |

On the 19th day of January 2016, this matter came on for hearing on the Motion for Detention Hearing (docket number 79) filed by the Defendant on January 14.[1] The Government was represented by Assistant United States Attorney Lisa C. Williams. The Defendant appeared personally and was represented by his attorney, Chad R. Frese.

## I. RELEVANT FACTS AND PROCEEDINGS

On December 15, 2015, Defendant Brandon Herrmann was charged by Indictment (docket number 7) with conspiracy to distribute a controlled substance. At the arraignment on December 21, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on February 22, 2016. The trial was subsequently continued to June 13, 2016 and consolidated with the trial of the co-defendants.

Cedar Rapids Police Officer Brian Furman, who is currently assigned to the DEA Task Force, testified regarding the circumstances underlying the instant charge. Officers were initially investigating the distribution of methamphetamine in Cedar Rapids. That investigation led officers to Waterloo and Oelwein, and eventually to Marshalltown.

---

[1] Defendant waived his right to a hearing at the initial appearance, while reserving his right to ask for a hearing on a later date.

Investigators learned that Defendant and Brittany Lear allegedly stole one ounce of methamphetamine from Ray Ohl (a co-defendant in this case). Investigators obtained a wire tap on Lear's phone from November 2014 to March 2015. During that time, investigators intercepted 26 pertinent calls and 580 pertinent texts involving Defendant buying or "middling" methamphetamine. Investigators believe Defendant was buying methamphetamine for resale. On one occasion, Defendant coordinated the sale of a gun in exchange for methamphetamine.

Defendant, age 34, was born in Waterloo and has lived there all of his life. Prior to his arrest, Defendant was living with his girlfriend and her two teenage children, and would return to that address if released. Defendant was married "for a few months" in 2008, but no children were born to the marriage. However, Defendant has two daughters (ages 17 and 13) from two prior relationships. The children apparently reside with their mothers.

Defendant reported he suffers from occasional acid reflux and is prescribed medication. He has been employed "off-and-on" by LRT Fabrication and, most recently, has been working there as a welder since September 2015. Defendant was employed during the summer of 2015 by Black Hawk Roofing.

Defendant was treated for anxiety and depression while incarcerated in February 2015. He was prescribed medication at that time, but has not taken the medication since about May 2015. In September 2015, Defendant completed a mental health evaluation and it was recommended he undergo further mental health treatment. However, Defendant did not follow through on those recommendations.

Defendant admitted consuming a six-pack of beer, using methamphetamine, or using marijuana on a daily basis from age 13 to about age 33. Defendant told the pretrial services officer, however, that he has only consumed alcohol three or four times in the last year. He admitted using marijuana an average of two times per week, but claims he has

abstained from using methamphetamine during the last year. Defendant has received outpatient substance abuse treatment on four or five occasions, and completed a 30-day inpatient treatment program in about 2011.

As detailed in the pretrial services report, Defendant has an extensive prior criminal record. In April 2000, at age 18, Defendant was charged with theft in the second degree. While on pretrial release, Defendant was arrested and subsequently convicted of possession of alcohol under legal age, interference with official acts, and driving while suspended. Defendant's pretrial release was revoked, but then reinstated after two days in jail. After being released, Defendant was convicted of trespass. Defendant then received a deferred judgment on the theft charge. While on probation, Defendant was convicted of drunk driving. His deferred judgment was revoked and Defendant received a suspended five-year prison term.

While on probation, Defendant was placed on escape status and subsequently charged with felony escape. In October 2001, Defendant's probation was revoked and he was sent to prison on both the theft charge and the escape charge. In April 2002, however, Defendant's sentence was reconsidered and he was released from prison and placed back on probation. Approximately one month later, a violation of probation was filed and a warrant was issued. Defendant's probation was revoked and he was sent to prison a second time.

In July 2003, Defendant was paroled, but a violation of parole was filed in January 2004. In April 2004, Defendant's parole was revoked and he was placed on work release. He was unsuccessful, however, and was placed on the violator's program in September 2004. He was then paroled again in March 2005.

In June 2005, Defendant was charged with interference with official acts. A violation of parole was filed and a warrant was issued for his arrest. While the warrant was pending, Defendant was arrested, charged, and subsequently convicted of burglary in

the third degree and three counts of forgery. In November 2005, his parole was revoked on the theft and escape charges, and he was sentenced to prison on the new felony charges.

In May 2008, Defendant was placed on work release and then paroled in September 2008. Defendant's parole was subsequently revoked, however, and he was sent back to prison in February 2010. While on parole, Defendant was convicted a second time of drunk driving. Defendant was sent back to prison in February 2011.

In March 2013, Defendant discharged his sentences in all five felonies. In May 2013, Defendant was charged and later convicted of possession of a controlled substance. While that charge was pending, Defendant was charged and later convicted of theft in the third degree. While on probation on the drug charge, Defendant was convicted of drunk driving a third time and harassment in the third degree. Records reflect that Defendant threatened to "slit the throat" of a Tama County deputy sheriff. In July 2015, Defendant was charged with two counts of assault, where he and his brother allegedly assaulted an individual at a bar and, after being asked to leave, assaulted the bar owner causing him to suffer a punctured eardrum and a concussion. Defendant initially pled guilty to those charges, but according to his attorney is attempting to withdraw his guilty please.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves

an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant;

(3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

The Government has the burden of proof in this regard. It is aided in certain cases, however, by a rebuttable presumption found at 18 U.S.C. § 3142(e). For example, if the Court finds there is probable cause to believe that the person committed a drug offense for which a maximum term of imprisonment of ten years or more is applicable, or possessed a firearm in furtherance of a drug trafficking crime, or committed certain specified offenses involving a minor victim, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3). In a "presumption case," the defendant bears a limited burden of production – not a burden of persuasion – to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once the defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the court. *Id. See also United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

## B. Analysis

Turning to the facts in the instant action, Defendant is charged with conspiracy to distribute a controlled substance. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to 18 U.S.C. § 3142(f)(1)(C).

Because there is probable to believe Defendant committed a serious drug offense, there is a rebuttable presumption that he should be detained pending the trial. Defendant has substantial ties to the Waterloo community, has a place to live, and apparently has a job if he is released. I believe these factors are outweighed, however, by Defendant's criminal record, particularly his performance while under supervision. After being charged with theft at age 18, Defendant initially received a deferred judgment. He subsequently violated his pretrial release at least twice, violated his probation at least twice, and had his parole revoked four times. According to the pretrial services report, Defendant continued to use drugs, failed to follow through on substance abuse treatment, missed appointments with his supervising officer, and, most importantly, committed additional felony offenses. Defendant has demonstrated over and over again that he will not comply with terms of supervision. The Court has no confidence that Defendant would comply with any terms or conditions which it may impose for his release.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

## III. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from the filing of the motion (January 14, 2016) to the filing of this Ruling (January 19, 2016) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 19th day of January, 2016.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA